**Conditionally Grant and Opinion Filed August 15, 2022**



**In The**
**Court of Appeals**
**Fifth District of Texas at Dallas**

**No. 05-22-00153-CV**

**IN RE FIVE STAR GLOBAL, LLC, Relator**

**Original Proceeding from the 68th Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. DC-20-08643**

## MEMORANDUM OPINION

Before Justices Molberg, Pedersen, III, and Garcia
Opinion by Justice Pedersen, III

In this mandamus action, relator Five Star Global, LLC asks us to compel the trial court: (a) to vacate its February 18, 2022 order, which denied relator's Expedited Motion to Reconsider Ruling on Jury Waiver and thereby left in place the trial court's oral ruling granting real parties in interest's Motion to Strike Jury Demand; (b) to remove this case from the non-jury docket; and (c) to reset this case for jury trial. We conclude that real parties in interest waived their right to enforce the parties' contractual jury waivers. Accordingly, the trial court abused its discretion by granting the Motion to Strike Jury Demand. We conclude further that

relator has no adequate appellate remedy for the erroneous deprivation of its right to a jury trial. Accordingly, we conditionally grant the petition for writ of mandamus.

## Background

In May 2018, real parties in interest Mark Hulme and Five Points Holding, LLC (FPH), plaintiffs in the underlying suit, sold various business assets to relator Five Star Global, LLC (FSG). The parties signed three contracts with respect to the transaction: (1) an employment agreement between FSG and Hulme, (2) an asset purchase and contribution agreement (the APA) among FSG and both real parties, and (3) a master services agreement (the MSA) between FSG and FPH's predecessor, Five Star Media, LLC. Each contract contained a jury waiver provision.

In November 2019, Hulme sued FSG in the 68th Judicial District of Dallas County for breach of the employment agreement. The original petition contained a "Jury Demand" section, and in the prayer, the petition further requested that "[t]he Court empanel a jury to determine any issue of fact." Hulme contemporaneously filed a separate "Enter Demand for Jury," acknowledging payment of the jury fee. Less than a month later, Hulme's business FPH joined in the suit. Together, real parties filed a first and then a second amended petition containing a "Jury Demand" section and reiterating the jury request in the prayer section.

FSG filed counterclaims for breach of all three contracts. FSG similarly demanded a jury trial and paid the required fee. All parties agreed to a proposed

scheduling order in which the case would be "set for jury trial" and joined in a motion asking the trial court to enter the proposed scheduling order.

Real parties then filed a third amended petition. This time, the petition omitted the "Jury Demand" section. However, real parties did not object to FSG's jury demand, and they again reiterated the request in the prayer section that the trial court empanel a jury to determine any issue of fact.

The case was briefly removed to federal court in May of 2020, but after a dismissal without prejudice on a procedural ground, real parties refiled their claims in state court, and the case was returned to the 68th Judicial District. The refiled case was assigned a different cause number, but in their new petition, real parties explained that "they ha[d] continued the sequential numbering of their pleadings, and, therefore, they have captioned this pleading as their 'fourth amended [petition].'"[1] Real parties' refiled pleading again prayed that "[t]he Court empanel a jury to determine any issue of fact and, upon final hearing of this cause, the Court find for Plaintiffs." FSG then refiled its counterclaims with a jury demand.

On September 21, 2020, the trial judge held a hearing to determine whether a case filed in a different court should be transferred to the 68th district court; real parties were not involved in the motion. In fact, when the judge remarked on the presence of counsel for real parties at the hearing, counsel stated, "I'm here

---

[1] Likewise, real parties titled their subsequent pleadings the Fifth Amended Petition, Sixth Amended Petition, and Seventh Amended Petition.

observing for the other case. I don't have a dog in the fight between Mr. Riemer's client and Mr. Bexley's client[s]." Nevertheless, when the issue of a jury trial arose in the movant's case, real parties' counsel spoke to that matter:

> I haven't looked into all the specifics of that jury waiver, but it is my belief that there is a jury waiver, and the documents between my client and Mr. Bexley's client, Mr. Bexley can certainly correct me if I'm wrong, but that was my understanding is that there is a jury waiver. If I'm wrong, Mr. Bexley can correct me, but I don't think we could have waived the jury. . . . Because I do strongly recall that there being a jury waiver that is going to apply, I assume to all claims. But again, I haven't drilled that down.

One month later, on October 21, 2020, real parties filed their fifth amended pleading. That petition added back real parties' "Jury Demand" and again prayed for the court to empanel a jury. Real parties did not object to FSG's jury demand.

Two days later, the trial court sent a notice that the case was set on the non-jury docket for June 15, 2021. FSG quickly sent the court a responsive letter, advising that its counterclaims included a request for jury trial and that it was paying the jury fee at that time.

On November 19, 2020, FSG filed "Defendants' Motion for Jury Trial Setting and Entry of Scheduling Order." The motion sought a later trial date—in November 2021, rather than June—and proposed a scheduling order. But before addressing those topics, FSG asserted:

> Recently, the Court set both lawsuits for non-jury trial on June 15, 2020. In the Hulme Lawsuit, Plaintiffs and Defendants have demanded a jury, and Defendants have tendered the requisite jury trial fee. Therefore, the Hulme Lawsuit must be transferred to the jury trial docket.

–4–

At the December 21, 2020 hearing, real parties' counsel agreed to the scheduling order as to form "to move things along," but she noted that real parties were not in agreement on whether the FSG matter should be tried to a jury and that she believed "there [would] be additional motions on the issue." The trial court entered a scheduling order setting this case for a jury trial.

On February 24, 2021—fifteen months after real parties filed the original case—they filed a sixth amended petition and answer. The petition did not include a "Jury Demand" section and, for the first time, real parties did not request a jury trial in the pleading's prayer section. At the same time, real parties filed a motion to strike the jury demand in FSG's latest counterclaims on the ground that the employment agreement, APA, and MSA contained contractual jury waiver provisions. FSG objected, arguing that real parties had long ago waived any right to enforce those contractual provisions by repeatedly requesting a jury trial themselves and by failing to assert any objection in response to FSG's jury demands. FSG pointed out that real parties chose to wait to assert their contractual right to a non-jury trial until (a) fifteen months after their own initial jury demand in the original action, (b) more than eight months after their own jury demand in the refiled action, and (c) more than five months after FSG filed its jury demand in the refiled action.

Real parties maintained that they had not waived the contractual jury waivers because they had preserved their objections during previous hearings. They pointed to the statements made by real parties' counsel when she was observing the

September motion-to-transfer hearing and when she was "moving things along" in the December hearing on a scheduling order.

The trial court did not finally hear and decide the motion to strike until September 10, 2021. The parties agreed that the motion turned on whether real parties' conduct, specifically their history of demanding a jury trial in their pleadings, had waived their right to rely on contractual jury waivers. The trial court asked the parties directly:

> Are there any cases on either side that talk about if you have a situation where the movant in a motion to I guess, or however you want to put it, the person seeking to enforce the jury trial waiver has asserted a demand for a jury, that that somehow waves [sic] the right to enforce the -- are there any cases either way that discuss that issue?

Counsel for both parties stated that they were unaware of such a case. In the absence of such authority, the trial court orally granted the motion to strike, apparently persuaded by real parties' reliance upon *In re C-Span Entertainment, Inc.*, 162 S.W.3d 422 (Tex. App.—Dallas 2005, orig. proceeding). In *In re C-Span*, this Court found that the trial court did not abuse its discretion by rejecting relator's argument that real party waived its right to enforce contractual jury waivers based on real party's agreement to seven scheduling orders that included a date for a jury trial setting. *Id.* at 425–26.

On February 8, 2022, FSG filed a motion for reconsideration, relying upon this Court's recent decision in *In re PlainsCapital Bank*, No. 05-20-00765-CV, 2021 WL 1921020, *3–4 (Tex. App.—Dallas May 13, 2021, orig. proceeding) (mem. op.),

–6–

in which we concluded that the trial court abused its discretion by removing a case from the jury docket after real party repeatedly demanded a jury in a series of pleadings and paid a jury fee. Nevertheless, the trial court denied the motion for reconsideration on February 18, 2022.

**The Petition for Writ of Mandamus**

One week later, on February 25, 2022, FSG filed this petition for writ of mandamus. In the petition, FSG argues that the trial court clearly abused its discretion by erroneously holding that real parties had not waived their right to a non-jury trial, even though real parties spent fifteen months making six jury demands and failed to oppose FSG's two demands. FSG further argues that, as soon as real parties demanded a jury trial themselves, Texas Rule of Civil Procedure 220 prohibited withdrawal of the case from the jury docket over FSG's objections.

In response, real parties first argue that the petition should be denied on the ground of laches because FSG waited nearly five months from the trial court's September 2021 oral ruling to file its reconsideration motion in the trial court, and then it waited until close to the trial date to file its mandamus petition. Real parties also contend that FSG's petition fails on the merits because the predecessor case should not be conflated with the refiled case. Real parties assert that in the refiled case, they never paid the jury fee, and they made it clear less than three months into the refiled case that they intended to invoke the contractual jury waivers. Real parties

–7–

insist that the boilerplate jury requests included in the early versions of their petition were merely form language that their counsel mistakenly forgot to delete.

In reply, FSG contends that laches does not apply here because the trial court's September 2021 oral pronouncement was too vague to be enforceable and was conditioned on a future motion to resolve whether co-defendant Southfield Mezzanine Capital L.P. was entitled to a jury trial.[2] FSG contends that real parties cannot demonstrate prejudice because the trial has been reset to August 2022. FSG also maintains that real parties cannot distance themselves from the predecessor case simply because it bore a different case number, especially when real parties themselves demonstrated and represented repeatedly that the two proceedings are the same lawsuit. FSG asserts that real parties' descriptions of their conduct are unsupported and contradicted by the record, and that in any event, their waiver occurred long before the refiled case.

**Discussion**

Mandamus is an extraordinary remedy requiring the relator to show that the trial court abused its discretion and that the relator lacks an adequate remedy on appeal. *In re Prudential Ins. Co. of Am.*, 148 S.W.3d 124, 135–36 (Tex. 2004) (orig. proceeding). We have stated that mandamus review is an appropriate method to

---

[2] Southfield was not a party to the contractual jury waivers. The trial court has recently clarified this aspect of its rulings: real parties' claims against FSG are scheduled to be tried to the court beginning on August 23 of this year; their claims against Southfield will be tried simultaneously, but to a jury.

determine questions of entitlement to or waiver of jury trial. *In re PlainsCapital Bank*, 2021 WL 1921020, at *3. And we have concluded that "when a trial court abuses its discretion by improperly granting a motion to strike a jury demand, relator lacks an adequate remedy by appeal, and mandamus relief is available." *Id.*

*Laches*

At the threshold, we address real parties' argument that our review of relator's petition should be foreclosed by the doctrine of laches. It is true that unreasonably delaying the filing of a petition for mandamus relief may waive the right to mandamus. *See In re Int'l Profit Assocs., Inc.*, 274 S.W.3d 672, 676 (Tex. 2009) (orig. proceeding) (per curiam). In this case, however, no such unreasonable delay occurred. Indeed, after the trial court denied the motion for reconsideration, relator promptly filed this petition for writ of mandamus just one week later. Contrary to real parties' argument, the issue of delay is measured between the denial of the reconsideration motion and the filing of the mandamus petition. *See In re Laibe Corp.*, 307 S.W.3d 314, 318 (Tex. 2010) (orig. proceeding) (per curiam) (measuring time between denial of reconsideration motion and mandamus filing and concluding two months is not unreasonable delay).

Real parties also complain about the five-month delay between the trial court's September 2021 oral pronouncement and the filing of the motion for reconsideration. However, for purposes of this original proceeding, "unreasonable delay is calculated with reference to the mandamus petition's filing." *See In re*

–9–

*Episcopal Sch. of Dallas, Inc.*, 556 S.W.3d 347, 360 (Tex. App.—Dallas 2017, orig. proceeding). Moreover, because the trial court's September 2021 oral ruling granted the motion to strike without prejudice to its contingent ruling upon Southfield's future motion for a jury trial, relator reasonably waited for the trial court to resolve the issues with Southfield before seeking mandamus relief. Accordingly, we reject real parties' laches argument.

*Jury Waiver*

Any contractual right can be waived. *In re PlainsCapital Bank*, 2021 WL 1921020, at *3 (citing *Perry Homes v. Cull*, 258 S.W.3d 580, 593 (Tex. 2008)). Litigation conduct establishes such a waiver if "the party's conduct—action or inaction—clearly demonstrates the party's intent to relinquish, abandon, or waive the right at issue." *LaLonde v. Gosnell*, 593 S.W.3d 212, 219–20 (Tex. 2019). Enforcement of a contractual right to a non-jury trial may be waived by a party's conduct. *See In re Gen. Elec. Capital Corp.*, 203 S.W.3d 314, 316 (Tex. 2006) (orig. proceeding) (per curiam). Waiver is largely a matter of intent, and for implied waiver to be found through a party's actions, intent must be clearly demonstrated by the surrounding facts and circumstances. *Id*. Waiver is ordinarily a question of fact, but when the surrounding facts and circumstances are undisputed, the question becomes one of law. *Id*.

As the Texas Supreme Court has explained, this state's strong policy of freedom of contract provides not only that "individuals can control their destiny and

–10–

structure their business interactions through agreements with other competent adults," but also that "'any competent adult can abandon a legal right and if he does so then he has lost it forever.'" *Shields Ltd. P'ship v. Bradberry*, 526 S.W.3d 471, 482 (Tex. 2017) (citing *In re Prudential Ins. Co.*, 148 S.W.3d at 129, and quoting 13 WILLISTON ON CONTRACTS § 39:14 (4th ed. 2013)). Even "a party's rights under a nonwaiver provision may indeed be waived expressly or impliedly." *Id.* at 482–83. Thus, the Texas Supreme Court has determined that when a party is on notice that a case has been set on the jury docket, failure to pursue enforcement diligently waives a party's right to enforce its contractual jury waiver. *See Rivercenter Assocs. v. Rivera*, 858 S.W.2d 366, 367–68 (Tex. 1993) (orig. proceeding) (holding that Rivercenter was not entitled to mandamus relief to enforce its contractual right because record did not show a justification for four-month delay in pursuing its right to a non-jury trial).

Relator first relies upon Rule 220 of the Texas Rules of Civil Procedure, which states that "[w]hen any party has paid the fee for a jury trial, he shall not be permitted to withdraw the cause from the jury docket over the objection of the parties adversely interested." TEX. R. CIV. P. 220. We question the applicability of Rule 220 in this case, because the removal to federal court technically divided this case in two, with the proceedings bearing different cause numbers. Arguably, the parties were required to pay court fees—including the jury fee—anew when the case was refiled. We are aware of no rule to the contrary.

Regardless, though, real parties' payment of the jury fee in the predecessor suit, as well as other conduct from that suit, are circumstances that we may consider when assessing whether real parties relinquished their right to enforce the contractual jury waivers. In this regard, real parties expressly decided to follow the sequential numbering of the pleadings from the predecessor suit in captioning the pleadings in the refiled suit. Thus, real parties themselves connected the refiled suit to the first suit. Moreover, once a party has abandoned a legal contractual right, it has lost the right forever. *See In re PlainsCapital Bank*, 2021 WL 1921020, at *4. Accordingly, we conclude that real parties' conduct in the original suit is relevant here. In addition to paying the jury fee, real parties also explicitly demanded a jury in six pleadings filed between November 15, 2019 and October 21, 2020. Although real parties deleted the "Jury Demand" paragraph in two of the pleadings, those pleadings still requested a jury in the prayer section, and the "Jury Demand" paragraph even re-appeared in their October 21, 2020 pleading. Moreover, real parties never objected to FSG's jury demand until they filed their motion to strike in February 2021, which was fifteen months after they initiated the lawsuit against FSG. *See LaLonde*, 593 S.W.3d at 219–20 (noting that inaction is also relevant for waiver purposes).

Because the fundamental issue in this case is whether real parties' conduct demonstrates a relinquishment of their right to enforce contractual jury waivers, we look to our recent decision in *In re PlainsCapital Bank*. In that case, the parties had

signed agreements containing jury waiver provisions. 2021 WL 1921020, at *1–2. Although relator's original petition did not include a jury demand, real parties demanded a jury repeatedly, beginning with their July 2016 filing and then in a series of amended pleadings after that. *Id.* at *2. They also paid the jury fee. *Id.* No party objected to the pleadings or correspondence demanding a jury or paying the fee. *Id.* On August 2, 2019, however, real parties filed a motion seeking to have the case removed from the jury docket and reset as a non-jury trial. *Id.* The trial court granted the motion. *Id.* This Court granted mandamus relief after determining that real parties had expressly renounced their contractual right to a non-jury trial when they repeatedly demanded a jury and paid the jury fee. *Id.* at *3. We concluded that real parties waived their right to enforce their contractual jury waivers by mandamus. *Id.* Similarly, real parties in this case repeatedly asked for a jury in a series of pleadings. They also paid a jury fee when the suit was originally filed in November 2019, and they never objected to FSG's jury demands in the first suit or the second suit.

Real parties continue to argue that they preserved their objections to the jury setting, pointing to statements made by their counsel at the September 2020 hearing. But at that hearing, real parties' counsel acknowledged no more than "I haven't looked into all the specifics of that jury waiver" and "I haven't drilled it down." Such statements are equivocal at best and do not qualify as a diligent preservation of real parties' right to enforce the jury waivers. *See Rivercenter Assocs.*, 858 S.W.2d at 367 (requiring "diligent pursuit of any right to a non-jury trial" to enforce the right

by mandamus). Further, shortly after that September hearing, real parties filed their fifth amended pleading, which did not object to FSG's jury demand, affirmatively added the "Jury Demand" paragraph back in after it had been deleted in previous pleadings, and again asked the court to empanel a jury to determine any issue of fact. Given the character of this October pleading, we reject the argument that counsel's September statements could act as a preservation of real parties' right to enforce the jury waivers.

But in any event, we conclude that real parties' efforts to tie preservation to the September 2020 hearing were already too late. By then, ten months had passed since real parties made their initial jury demand in their original pleading in the first suit and paid the jury fee. Real parties had also filed four pleadings requesting a jury during that timeframe without objecting to relator's request for a jury. We conclude that by September 10, real parties had waived their right to enforce the contractual jury waivers. *See id.* at 367–68 (holding four-month delay in pursuing right to non-jury trial waived right). The right to rely on the contractual waivers could not be resuscitated by equivocal statements of counsel, especially in the face of continued pleadings-based demands for a jury trial.

### Conclusion

We conclude that the trial court abused its discretion by striking relator's jury demand and refusing to reconsider that ruling. We conclude further that relator lacks an adequate remedy by appeal if forced to try this case without a jury. We

–14–

conditionally grant relator's petition, and we direct the trial judge: to vacate his order of February 18, 2022; to deny real parties' Motion to Strike Jury Demand; to remove this case from the non-jury docket; and to reset this case for jury trial. We are confident the judge will promptly comply. Our writ will issue only if he does not.

/Bill Pedersen, III//

220153f.p05

BILL PEDERSEN, III
JUSTICE